**Gladys Hall Hamrick SMITH, Individually and as Executrix of the Estate of Bethel T. Smith, Deceased, Plaintiff-Appellee,**

v.

**STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellant.**

No. 79-2103.

United States Court of Appeals, Fifth Circuit.

Dec. 22, 1980.

Frank M. Gleason, Rossville, Ga., for defendant-appellant.

Archer, Elsey & Vaughn, Stanley D. Tilley, William T. Elsey, Cartersville, Ga., for plaintiff–appellee.

Before RONEY, HILL and FAY, Circuit Judges.

RONEY, Circuit Judge:

In this diversity action, defendant State Farm Fire & Casualty Co. (State Farm) appeals from a jury verdict in favor of the insured plaintiff on a fire loss. State Farm contends the district court erred in excluding evidence of other fires destroying property owned by the policyholder and in refusing to find that the policyholder's trustee in bankruptcy was an indispensable party. We affirm, holding the district court did not abuse its discretion in refusing to admit the evidence and did not err in concluding under the facts in this case that the trustee in bankruptcy was not an indispensable party.

The fire which is the subject of this suit occurred on March 19, 1976, destroying property owned by Bethel and Gladys Smith. When State Farm became suspicious of the origin of the fire and refused to pay on the policy which insured the premises, the Smiths sued. State Farm's chief defense was that at the time Bethel Smith obtained the policy from State Farm, he intended to defraud State Farm by burning his home and in fact did procure the purposeful burning of his home to collect on the insurance policy.

In response to Requests for Admission, plaintiff admitted that Bethel Smith had owned five other dwellings which had been destroyed by fire and for which insurance had apparently been collected. The five were: (1) a house in Cobb County, Georgia, destroyed by fire in 1961; (2) a house in Cobb County, Georgia, destroyed by fire in 1962; (3) a house in Adairsville, Georgia, destroyed by fire in 1964; (4) a house in Adairsville, Georgia, destroyed by fire in 1972; and (5) a trailer in Calhoun, Georgia, destroyed by fire in 1974.

In an attempt to show Bethel had the intent to defraud when he took out the policy and was involved in a plan or scheme to defraud, the insurance company proffered evidence concerning these fires. The district court refused to admit evidence as to any but the last fire, the one in 1974. The district court's decision to admit evidence of the 1974 fire appears to hinge on the fact that on April 7, 1975, when the Smiths applied for fire insurance, one of the questions on the application was whether the applicants had suffered any fire loss within the last three years. The 1974 trailer loss was reported in the application. The other four fires, however, fell outside the three–year period inquired about in the application. Although the agent who sold the policy testified that he asked Smith if he had ever suffered any other fire losses and had received a negative reply, the court refused to admit this testimony on the ground that the application on its face was limited to a three–year period.

A. *Admissibility of Evidence of Other Fires*

Because of the limited scope of the question in the application form, there was a significant difference between evidence of fires occurring before and after the three–year period. Evidence of the 1974 fire, which came within the application period, was relevant and the danger of undue prejudice was outweighed by its probative value.

As to the other four fires, State Farm argues that the district court did not conduct the kind of analysis and balancing required by the law but instead drew an arbitrary line at three years. Our review of the record convinces us, however, that the district court did conduct the type of analysis required when evidence of prior conduct is offered to prove a common scheme, plan or intent.

The applicable rule is Fed.R.Evid. 404(b), which provides as follows:

*Other Crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is

not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (*en banc*), this Court set forth a two–part test for determining the admissibility of evidence under this rule. State Farm contends the *Beechum* test is applicable to civil actions, an argument we accept for the purposes of this appeal without analysis or decision.

> The *Beechum* test is stated as follows: First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403.

582 F.2d at 911. Under the first part of the test, the standard for relevancy is established by Fed.R.Evid. 401. In addition, the two acts must be significantly similar with respect to the issue to which the evidence of the extrinsic act is addressed, and there must be evidence showing that the extrinsic act in fact occurred and the person accused of committing the act in fact did so. Even if the extrinsic act is found to be relevant, however, substantial doubt as to its similarity and as to whether defendant committed the act will necessarily dilute its probative value for purposes of the balancing required in the second part of the *Beechum* test. As in all balancing under Rule 403, the district court may exercise its sound discretion in deciding whether to admit the evidence.

Although the record is somewhat confused because the district judge at first based his admissibility ruling on the three–year policy application theory, and admitted evidence of the 1974 fire on the basis of that theory, it is apparent from the record that, with regard to the other fires, the district judge eventually conducted the type of analysis called for in *Beechum*. He repeatedly indicated that the question of admissibility depended upon a showing by State Farm that the extrinsic acts were relevant to the issues. He stated he did not find the earlier fires sufficiently similar in their circumstances nor near enough in time to the fire in this case. Finally, the judge demonstrated an awareness of the prejudice the evidence would cause plaintiffs. These are precisely the factors to be considered under a *Beechum* analysis, so that the sole issue remaining for this Court is whether the judge abused the sound discretion he enjoys in Rule 403 evidentiary matters.

The district court cannot be faulted for refusing to admit the mere fact Bethel Smith had owned five insured buildings destroyed by fire. Without more, the relevancy of such evidence is highly questionable and the prejudice would be great.

The evidence concerning the prior fires was essentially as follows:

As to the 1961 fire, no evidence was proffered. The only indication of it in the record is plaintiffs' admission.

As to the 1962 fire, the only evidence in the record is the testimony of Bethel's ex–wife, who testified that in 1971 or 1972, shortly after they were married and some ten years after the fire, she and Bethel had a conversation about fires. Her report of the conversation was the following:

> He said that they had a fire in Acworth, didn't say where at, he just said Acworth, and he smiled and said lightning struck it and I said, "Lightning?"
>
> And he said, "Well, we burned it." He didn't say "we" who. He said, "We burned it." Said that he was running short of money, and that he needed the money, and we burned it. That's all he said.

This testimony was given in 1978. Given the time lapse, the vague nature of the testimony, and the potential for undue prejudice, we cannot say the district judge abused his discretion in refusing to admit this evidence.

As to the 1964 fire, the ex–wife testified that in the same conversation Bethel admitted to her that he had burned his house in 1964 because he was running short of money. Her testimony was simply the following:

A. And then he told me he used to own a sugar shack and that we burned the sugar shack. He did not call no names [sic], just "We burned the sugar shack."

\* \* \* \* \* \*

Q. Now, what did he tell you about the house in Adairsville [the "sugar shack"] that burned?

A. He just told me it burned.

Q. Did he say anything else?

A. No, sir.

In addition, a former investigator with the Georgia State Fire Marshal's office stated that he concluded that the fire which destroyed the building burned in 1964 was "an arson fire, a fraud fire." The investigator admitted he had not gone to the scene of the fire until more than two months afterwards and after 14 years he didn't "recall just what was there. This has been some time ago."

Considering the length of time since the 1964 fire and the failure to show any further similarity between the 1964 fire and the fire in this case, facts noted by the district judge in refusing to admit the evidence, we cannot say there was an abuse of discretion.

As to the 1972 fire, the evidence was somewhat stronger. Bethel Smith's ex-wife testified that she and Bethel were separated at the time. He called her at her daughter's house and told her that as soon as possible she should remove her things from the house they owned and were renting to her sister. She said she would be unable to move them. The next day Bethel showed up with her chifforobe and that night the house burned. The sister living in the house testified that at about the time the fire started, she and Bethel were working together and he appeared nervous and kept looking at his watch. When she learned of the fire and left work to go there, Bethel was already on the scene. The sister's husband testified that after the fire, Bethel suggested to him that his furniture be listed as Bethel's on the insurance claim so the insurance company would pay for it.

The district judge again stated there was not an adequate showing that the 1972 fire was incendiary in nature or sufficiently similar to the 1976 fire to overcome the prejudice the evidence would cause plaintiffs. In weighing the probative value of this evidence and balancing it against the undue prejudice, the trial judge did not abuse his discretion.

We need not decide if it would have been reversible error to admit this prior fire evidence. We hold only that the trial court did not abuse its discretion in ruling evidence of the earlier fires inadmissible.

B. *Trustee in Bankruptcy as an Indispensable Party*

At the time of the fire loss Bethel Smith was involved in voluntary bankruptcy proceedings. The trustee in bankruptcy, however, was not a party to this lawsuit. State Farm argues the trustee was an indispensable party under Fed.R.Civ.P. 19 and therefore the judgment must be vacated.

Bethel, who owned a life estate in the property, started the litigation in state court. State Farm removed the case to federal court. Gladys, who owned the remainder interest, was added as a plaintiff as an additional insured. Shortly thereafter Bethel died, and Gladys, as Executrix of Bethel's estate, was substituted in his stead as a party plaintiff.

Although Bethel's trustee in bankruptcy notified Gladys that he claimed the insurance proceeds as to the life estate and although State Farm claimed in its answer that any property interest in the destroyed premises was held by the trustee, no steps were taken by either party to add the trustee as a party to the action. The pretrial order specifically stated there were no questions concerning nonjoinder. State Farm

never brought the matter on for a pretrial hearing or otherwise offered evidence of the bankruptcy's existence until midway through the trial. Its introduction at that point appears to have been for the purpose of supporting State Farm's contention that Gladys Smith had no insurable interest in the property, and not to support the argument that the trustee was an indispensable party.

At the conclusion of the evidence, the jury was instructed to return a special verdict specifying the value of Bethel's life estate at the time of the fire. It found the life estate had a value of $1,850. The court initially awarded this amount to Gladys in her capacity as Executrix of Bethel's estate. From State Farm's argument in its motion for a new trial that recovery of the value of the life estate duplicated the award to Gladys for living expenses, the district court itself became aware of and raised for the first time the specific issue of the trustee's indispensability. Following additional briefing by the parties, the court ruled that the trustee in bankruptcy was not an indispensable party. It vacated, however, the judgment of the life estate in favor of Gladys because it concluded that any award of the value of the life estate must be in favor of the trustee, who was not a party.

The parties argue at length on whether under Georgia law the interests of Bethel and Gladys at the time of the fire and following Bethel's death were joint or severable. State Farm argues that if Bethel and Gladys Smith were joint obligees, the trustee was necessarily an indispensable party. It cites *Harrell & Sumner Contracting Co. v. Peabody Petersen Co.*, 546 F.2d 1227 (5th Cir. 1977), which held that joint venturers whose rights were governed by principles of partnership law were indispensable parties.

■ Such argument relates more to the form of Rule 19 before it was amended in 1966. The amendment, however, greatly revised the rule "to eliminate formalistic labels that restricted many courts from an examination of the practical factors of individual case." 7 Wright & Miller, *Federal Practice & Procedure: Civil* § 1601 (1972) (quoting Cohen, *The New Federal Rules of Civil Procedure*, 54 Geo.L.J. 1204, 1206 (1966)). Under the present rule, pragmatic concerns, especially the effect on the parties and on the litigation, control a court's decision on joinder. *See Broussard v. Columbia Gulf Transmission Co.*, 398 F.2d 885, 888 (5th Cir. 1968). *See also Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); *Morrison v. New Orleans Public Service, Inc.*, 415 F.2d 419 (5th Cir. 1969).

■ Rule 19(a) states that a person shall be joined if

(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

The absence of the trustee in no legal way affects the according of complete relief to those already parties. Neither is the trustee's ability to protect his interest in the life estate significantly impaired. It is clear from the record that the trustee was aware of this litigation yet did not attempt to be made a party. He instead secured an order of the bankruptcy court requiring Gladys Smith to pay the trustee the value of the life estate from any proceeds of this action. The fact that the trustee was willing to rely on the efforts of Gladys, together with the fact that State Farm's obligation is limited to that specified under the contract of insurance, strongly suggest that State Farm is not subject to a "substantial risk" of incurring double liability for the value of the life estate. This conclusion is reinforced as a practical matter by a letter from the bankruptcy trustee to the district court, placed in the record by State Farm, in which the trustee indicates he would be satisfied by the amount specified by the jury as the value of the life estate.

Considering these circumstances along with the fact that the indispensability issue was squarely raised only at the conclusion of a lengthy and expensive trial, and after examining the effects of a contrary holding on the parties and on the litigation process, we hold that the judgment should not be vacated for failure to join the trustee in bankruptcy.

AFFIRMED.