The COCA-COLA COMPANY, Plaintiff,

v.

The PROCTER & GAMBLE COMPANY, and Coca-Cola Bottling Mideast, Inc., Defendants.

Civ. A. No. C82–2864A.

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 7, 1983.

On Motion to Amend and to Transfer Feb. 25, 1983.

Frank C. Jones, King & Spalding, and David M. Rapp, Atlanta, Ga., for plaintiff.

John J. Dalton, Troutman, Sanders, Lockerman & Ashmore, Kent E. Mast and James Gilbert, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for defendants.

## ORDER

VINING, District Judge.

This action for declaratory and injunctive relief was filed in the Superior Court of Fulton County on December 14, 1982. On that same date Judge Clarence Cooper signed a temporary restraining order, which basically restrained the defendants from taking any further steps to complete the acquisition of Coca-Cola Bottling Mideast, Inc., by the Procter & Gamble Company and further restrained Coca-Cola Bottling Mideast from disclosing any information pertaining to Coca-Cola bottling operations to Procter & Gamble. The case was removed to federal court on December 16, 1982. The complaint basically alleges that the proposed acquisition of Mideast by

Procter & Gamble would result in a breach of the franchise agreement between Coca-Cola and Mideast, would violate implied contractual obligations of confidentiality, and would result in a breach of the fiduciary relationship of trust between Coca-Cola and Mideast; Coca-Cola further alleges that Procter & Gamble's conduct in seeking to acquire Mideast constitutes a tortious interference with contract and also constitutes unfair competition.

Pending before the court are the defendants' motions to dismiss for lack of personal jurisdiction and insufficiency of process or, in the alternative, to transfer because of improper venue. They have also moved to transfer or dismiss because of the failure to join indispensable parties.

## I.  FACTUAL BACKGROUND

On November 1, 1921, Mideast, through a predecessor corporation, entered into an agreement with Coca-Cola to bottle Coca-Cola in a defined area in Kentucky and Indiana. This "bottler's contract" is perpetual, grants to Mideast an exclusive territory, and obligates Coca-Cola to supply Mideast's total requirements of Coca-Cola bottle syrup at a price controlled by a formula in the contract, as amended. Paragraph 10 of that contract provides, "[N]either this contract nor any part of the territory herein described shall be assigned, transferred or conveyed, in whole or in part, without the written consent of ... The Coca-Cola Company."

On November 14, 1982, Procter & Gamble announced that it had agreed to purchase the stock of Mideast. Coca-Cola's consent to the transfer of that stock was neither sought nor obtained. Procter & Gamble acknowledged in its announcement that the purpose of the proposed purchase was to learn about the bottling and distribution of soft drinks by Mideast, thereby enabling Procter & Gamble to bottle and distribute its own brand of soft drinks more effectively.

The stock of Mideast is held in trust by the Liberty National Bank & Trust Company of Louisville, Kentucky, pursuant to a trust established by W.B. Terry, Sr., approximately seven years ago. The current income beneficiaries of the trust are the four sons of Mr. Terry, who, together with their father, are the only directors of Mideast.

Although the complaint in this action sought to enjoin the effectuation of the stock purchase agreement whereby Procter & Gamble would acquire the stock of Mideast, Coca-Cola in its brief in opposition to the defendants' motions to dismiss or transfer states that the agreement between Procter & Gamble, Liberty National Bank, and Mr. Terry (as guarantor) "is not at issue in the present case, and [Coca-Cola] seeks no declaration with respect to the stock purchase agreement." That brief further states, "It is the contract between Mideast and the [Coca-Cola] Company—the Bottler's Contract—which is at issue and with respect to which a declaratory judgment is sought."

Because the defendants' motions address substantially the same issues, this order will treat the issues, not the motions, seriatim.

## II.  PERSONAL JURISDICTION

In a diversity case, a federal court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the Long Arm Statute of the forum. *Goldkist, Inc. v. Baskin-Robbins Ice Cream Company*, 623 F.2d 375 (5th Cir.1980). The Georgia Long Arm Statute, Off.Code of Ga.Ann. § 9–10–91, which has been held to be co-extensive with the Due Process Clause of the Fourteenth Amendment, *Shellenberger v. Tanner*, 138 Ga. App. 399, 227 S.E.2d 266 (1976), provides that a court in Georgia may exercise personal jurisdiction over any non-resident if that person:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside the state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in the state; or

(4) Owns, uses, or possesses any real property situated within this state.

█ Since subsection (1) applies only to matters in contract, not to those sounding in tort, *Lutz v. Chrysler Corp.*, 691 F.2d 996 (11th Cir.1982), and since there is no contractual relationship between Coca-Cola and Procter & Gamble, there can be no assertion of personal jurisdiction over Procter & Gamble by virtue of this subsection. However, allegations of tortious interference with contract and of unfair competition are sufficient to invoke long arm jurisdiction under subsection (3) provided, however, that Procter & Gamble has sufficient minimum contacts with the state of Georgia to satisfy the Due Process Clause of the Fourteenth Amendment. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

█ The depositions taken thus far show that Procter & Gamble conducts its manufacturing, distributing, and selling business through subsidiaries. Of these subsidiaries, at least four actively conduct business in the state of Georgia: The Procter & Gamble Manufacturing Company, The Procter & Gamble Distributing Company, The Procter & Gamble Paper Products Company, and The Buckeye Cellulose Corporation. During the fiscal year ending June 30, 1982, Procter & Gamble, through its subsidiaries, derived revenues from sales to consumers in Georgia in excess of $190,000,000.

The court notes that there is an extremely close relationship between Procter & Gamble and its subsidiaries. There are five directors on the boards of each of the four named subsidiaries, and three of these directors sit on all four boards; four of the directors of Procter & Gamble Distributing also sit on the board of Procter & Gamble

Paper Products. Additionally, serving on the board of Procter & Gamble are three of the directors of Procter & Gamble Distributing, four of the directors of Procter & Gamble Manufacturing, four of the directors of Procter & Gamble Paper Products, and three of the directors of Buckeye Cellulose. The president of Procter & Gamble is also the president of Procter & Gamble Distributing, Procter & Gamble Manufacturing, and Procter & Gamble Paper Products; all four subsidiaries and the parent corporation have the same secretary and treasurer. Every director of the four named subsidiaries serves as an officer of Procter & Gamble.

Procter & Gamble provides centralized functions for its subsidiaries in a wide range of areas, including legal, patent, research and development, advertising, and sales, although the subsidiaries are normally billed for any work done for them. Procter & Gamble and its wholly-owned subsidiaries also prepare a consolidated annual tax return.

Procter & Gamble has stipulated it spends a substantial sum of money for advertising on national television networks and that this advertising finds its way into Georgia.

Thousands of phone calls are made each month between Procter & Gamble and its subsidiaries and other locations in Georgia. During the single month of November 1982 Procter & Gamble made over 2800 such telephone calls to persons within the state of Georgia.

In 1925 the United States Supreme Court held that a corporation in one state did not subject itself to personal jurisdiction in another state simply because it conducted business in that state through a subsidiary corporation. *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). However, the holding of this case was substantially refined in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and more recently the Court recognized that "[t]he limits imposed on state

jurisdiction by the Due Process Clause, in its role as guarantor against inconvenient litigation has been substantially relaxed over the years." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 292, 100 S.Ct. 559, 563, 62 L.Ed.2d 490 (1980). *See also Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1952). This court concludes that the harsh strictures of *Cannon Manufacturing* are no longer applicable.

■ This court holds that neither the Due Process Clause nor traditional notions of fair play and substantial justice preclude the exercise of personal jurisdiction over a parent corporation if the parent's control over the subsidiaries' activities is so complete that the subsidiary is, in fact, merely a division or department of the parent. *See Katz Agency, Inc. v. Evening News Association*, 514 F.Supp. 423 (S.D.N.Y. 1981). This court has previously held that where a corporation advertises its product in the media within Georgia and, through subsidiaries or distributorships, places its product "in channels of international commerce knowing full well that normal product migration through the distributive chain will inevitably bring a significant number of its [products] to the retail market in Georgia," such corporation was subject to the long arm jurisdiction of Georgia. *Thornton v. Toyota Motor Sales USA Inc.*, 397 F.Supp. 476, 482 (N.D.Ga.1975).

This court finds that the pervasive and tight control exercised by Procter & Gamble over its subsidiaries (accomplished primarily through interlocking directorates, commonalilty of officers, and necessity of parent review and approval of subsidiary actions) renders these subsidiaries functionally equivalent to departments or divisions of the parent corporation. This close, symbiotic relationship between Procter & Gamble and its subsidiaries is recognized by Procter & Gamble as shown by the following statement in its 1982 annual report:

> The Company's operations are characterized by interrelated raw materials and manufacturing facilities and centralized research and administrative staff functions, making any separate profit determination by product category dependent upon necessarily arbitrary assumptions as to allocations of common costs. Different assumptions or physical or organizational arrangements would produce different results.

Various tests, formulas, and factors have been used by the courts in determining whether they should exercise jurisdiction over non-residents, but the quintessential consideration is whether subjecting the non-resident to jurisdiction would be reasonable and fair. *See World-Wide Volkswagen* and *International Shoe*. A review of the business operations of Procter & Gamble and its subsidiaries together with a consideration of Procter & Gamble's contacts with Georgia through its subsidiaries convinces this court that it would be neither unreasonable nor unfair for the court to exercise personal jurisdiction over Procter & Gamble.

For the foregoing reasons, this court holds that the Georgia Long Arm Statute gives it personal jurisdiction over Procter & Gamble.

■ Mideast is a party to a perpetual bottler's contract with The Coca-Cola Company, which is headquartered in Atlanta; that contract is partly performed in Georgia. Mideast is also a party to a number of other contracts with Coca-Cola which are partly performed here, including contracts for the sale of other soft drink syrups. Personnel from Mideast have made at least 107 different trips into Georgia related to the bottling business just since 1978. Approximately 40 of these trips were for the purpose of training seminars at Coca-Cola's training center in Atlanta. The seminars covered a wide range of technical, financial, and marketing subjects, which can be quite valuable to a local bottling operation.

Although syrup is shipped to Mideast from an Ohio syrup plant, Mideast purchases all of its syrup requirements from Coca-Cola in Atlanta, where all invoices and bookkeeping are administered.

Telephone calls take place on a regular and continuous basis between Mideast and Coca-Cola in Atlanta, and at least 800 such telephone calls have been made in late 1981.

In early 1980, the bottler's contract between Mideast and Coca-Cola was amended to provide for flexible pricing of the Coca-Cola bottle syrup which is provided by Coca-Cola to its bottlers. Meetings and discussions regarding the amendment took place in Atlanta, and personnel from Mideast attended this Atlanta meeting.

This court finds that Mideast has transacted business in the state of Georgia, the mere negotiation of a contract being sufficient to invoke long arm jurisdiction under Off.Code of Ga.Ann. § 9–10–91(1). *Shea/Rustin, Inc. v. Home Fashion Guild, Ltd.*, 135 Ga.App. 88, 217 S.E.2d 405 (1975). Mideast's activities as outlined above show that Mideast's contacts with the state of Georgia are not mere isolated, casual incidents but are significant and continuous with a fair measure of permanence and continuity. These contacts are sufficient under Georgia's Long Arm Statute for this court to have personal jurisdiction over Mideast, and the exercise of such jurisdiction does not run counter to the requirements of the due process clause.

### III. SERVICE AND SUFFICIENCY OF PROCESS

The defendants' contentions that service was improper and insufficient are based primarily upon their contention that the court lacks personal jurisdiction over the defendants. Since the court has determined that it can properly exercise personal jurisdiction over the defendants, the court finds no merit in the defendants' arguments that service of process was improper or insufficient.

### IV. TRANSFER

The defendants have moved to transfer this action to either Kentucky or Ohio pursuant to 28 U.S.C. § 1404(a) which provides, "For the convenience of parties and witnesses, in the interest of justice, a dis-trict court may transfer any civil action to any other district or division where it might have been brought."

The court recognizes that many potential witnesses reside in either Kentucky or Ohio; however, the court further recognizes that many potential witnesses reside in Georgia. The documents in this case, although numerous, are not so voluminous that they cannot be furnished to counsel or to court in this district.

Although this action could have been brought in another forum, the plaintiff has chosen to litigate in this district. This is a consideration entitled to great weight, especially since the plaintiff resides in this district. There has been no showing that key witnesses would be greatly inconvenienced by requiring their presence in this district, nor has there been a showing that these witnesses' testimony could not be presented to this court through depositions if they would be greatly inconvenienced by having to appear here. Additionally, there are apparently no actions in other districts of a similar nature. This court finds that the defendants simply have not met their burden under *Grey v. Continental Marketing Associates, Inc.*, 315 F.Supp. 826 (N.D. Ga.1970), of showing that this case should be transferred to another district.

For the foregoing reasons, the motion to transfer is denied.

### V. INDISPENSABLE PARTIES

The court is concerned about the different approaches taken by Coca-Cola in its brief (focusing on the bottler's contract) and in its complaint (focusing on the stock purchase agreement). The court hereby reserves a ruling on the question of whether Liberty National Bank and W.B. Terry, Sr., are indispensable parties until the court is able to confer with all counsel and hear oral argument as to what position Coca-Cola is taking relative to the bottler's contract and the stock purchase agreement. The temporary restraining order as previously entered and as orally modified at the meeting with counsel on December 17,

1982, is extended until the court is able to hear oral argument with respect to the question of indispensable parties.

## VI. SUMMARY

The defendants' motions to dismiss for lack of subject matter jurisdiction are denied. The defendants' motions to transfer are denied. A ruling on the defendants' motions to transfer or dismiss for failure to join indispensable parties is reserved. The temporary restraining order, as orally modified, is hereby extended until the court hears argument on the indispensable parties issue.

## ON MOTION TO AMEND AND TO TRANSFER

This action for declaratory judgment and injunctive relief was filed in the Superior Court of Fulton County, Georgia, on December 14, 1982, and was removed to this court on December 16. On January 7, 1983, this court denied the defendants' motions to dismiss for lack of personal jurisdiction and at the same time denied the defendants' motions to transfer pursuant to 28 U.S.C. § 1404(a). In that order the court expressed its concern about the different approaches taken by Coca-Cola in its briefs and its complaint and reserved ruling on the question of whether Liberty National Bank and W.B. Terry, Sr., were indispensable parties. The parties have now more fully briefed that issue and Coca-Cola has moved to amend its complaint so as to put the nature of case and the relief sought in clearer focus.

Coca-Cola's motion to amend its complaint is unopposed, and that motion is hereby GRANTED.

The factual background of this case was set out in the court's order of January 7, and only a brief synopsis is necessary at this time in order to gain a proper prospective of the issues confronting the court. Pursuant to a bottler's contract entered into between Mideast (and its predecessors) and Coca-Cola in 1921, Coca-Cola has granted to Mideast certain perpetual and exclusive rights as a bottler to purchase Coca-Cola syrup and to manufacture and distribute Coca-Cola. All the stock of Mideast was owned by W.B. Terry, Sr., until he transferred that stock to a trust which had been established by him in 1974; the current trustee of that trust is Liberty National Bank and Trust Company of Louisville, Kentucky. In November 1982, Procter & Gamble announced that it had reached an agreement whereby it would acquire all of the stock of Mideast from Liberty National as trustee.

In its original complaint Coca-Cola focused upon the harm that it would allegedly suffer if the stock purchase agreement between Procter & Gamble and Liberty National was effectuated and Procter & Gamble acquired Mideast. Paragraph 21 of the original complaint succinctly sets out Coca-Cola's concerns:

P & G's acquisition of Mideast and its Coca-Cola bottling operation in order to permit P & G to enhance its own competitive products, and to benefit bottlers in competition with The Coca-Cola Company and its bottlers, would constitute an actual breach of the contractual and fiduciary obligations of Mideast to The Coca-Cola Company and an unfair, improper and unlawful effort on the part of P & G to appropriate the trade secrets and confidential business information of its competitor. Unless enjoined and restrained by this Court, P & G's acquisition of Mideast would cause great and irreparable harm to The Coca-Cola Company for which it has no adequate remedy at law.

However, in its amended complaint, Coca-Cola does not seek a permanent injunction against Procter & Gamble's acquisition of Mideast but seeks a declaration that such acquisition would constitute a material breach of the express and implied obligations of Mideast to Coca-Cola "authorizing The Coca-Cola Company to immediately terminate the Bottler's Contract and other express and implied contractual relationships running between The Coca-Cola Company and Mideast" and further declare that Mideast's conduct in allowing, facilitating, and permitting the proposed acquisition of

Mideast "would, under the facts of this case, authorize The Coca-Cola Company to immediately terminate the Bottler's Contract and other express and implied contractual relationships running between The Coca-Cola Company and Mideast." In its amended complaint, Coca-Cola asks that Procter & Gamble be temporarily restrained and preliminarily enjoined from completing the acquisition of Mideast and from obtaining and disseminating information relating to Coca-Cola's bottling operations and that Mideast be temporarily restrained and preliminarily enjoined from furnishing to Procter & Gamble any information pertaining to Coca-Cola bottling operations and from taking any steps to facilitate the acquisition of Mideast by Procter & Gamble "pending a decision on the declaratory judgment herein sought."

This change of focus from the stock purchase agreement in the original complaint to the bottler's contract in the amended complaint is undoubtedly the result of Coca-Cola's recognition that in a suit to permanently enjoin the sale of Mideast stock to Procter & Gamble, the stockholder would be an indispensable party. Rule 19(a)(2)(i), Federal Rules of Civil Procedure, specifically provides that a person shall be joined as a party in the action if he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may as a practical matter impair or impede his ability to protect that interest. There can be little doubt that in an action seeking to enjoin the effectuation of a stock purchase agreement the parties to that agreement would not be able to protect their interests in that agreement unless they were parties to the action. In its amended complaint, Coca-Cola seeks to avoid the dictates of Rule 19 by having the court declare its rights with respect to the bottler's agreement (to which only it and Mideast are parties) instead of seeking to enjoin the effectuation of the stock purchase agreement.

In paragraph 22 of its amended complaint, Coca-Cola states that it "refuses to consent to the acquisition of Mideast by P

& G under the circumstances here present." Ordinarily such refusal would be of no importance, since Coca-Cola is not a stockholder nor does it have a contractual relationship with the sole stockholder of Mideast so as to give it any rights to object to a stock transfer. However, Coca-Cola relies upon paragraph 10 of the bottler's contract, which provides, "It is further agreed that neither this contract nor any part of the territory herein described shall be assigned, transferred or conveyed, in whole or in part, without the written consent of the party of the first part [*i.e.* Mideast and its predecessors in interest] and The Coca-Cola Company." Coca-Cola seeks to invoke the anti-transfer provisions of this paragraph by alleging in amended paragraph 22 of its complaint that Mideast's conduct "in allowing, permitting and facilitating P & G's efforts to acquire the interest of Mideast in the Bottler's Contract" constitutes a breach of that contract. The problem with this argument is that Mideast is not transferring or assigning any rights under the contract; rather, it is Mideast itself which is being transferred from one stockholder to another.

Simply stated, the central issue in Coca-Cola's amended complaint is whether a non-assignability clause in a contract to which a corporation, but not its sole stockholder, is a party may be used to halt a sale of the stock in that company. If this court should hold that such a non-assignment clause was sufficient to prevent a transfer of the stock, the stockholder's rights would unquestionably be affected.

In making a determination of indispensability under Rule 19, Federal Rules of Civil Procedure, the court is guided by the general principle that pragmatic concerns, especially the effect on the parties and on the litigation, control any decision on joinder. *Smith v. State Farm Fire & Casualty Co.*, 633 F.2d 401 (5th Cir.1980). Consideration of joinder or dismissal of the action involves a two-fold analysis. First, the court must determine if the party in question is one who can and should be

joined under the standards set forth in Rule 19(a). If joinder is not possible under Rule 19(a), the court must then look to Rule 19(b) and, applying the enumerated factors, decide whether "in equity and good conscience" the action should proceed. If the court concludes that the action should not go forward without the party in question's presence, the absentee is then regarded as indispensable, and the action must be dismissed. *Haas v. Jefferson National Bank of Miami Beach,* 442 F.2d 394 (5th Cir.1971).

■ As stated earlier, a declaration by this court that the non-assignment clause in the bottler's agreement was sufficient to prevent a transfer of the company's stock would unquestionably affect the rights of the stockholder. It is for this reason that the stockholder must be made a party to this action since his absence would "as a practical matter impair or impede his ability to protect that interest." Rule 19(a)(2)(i).

Since this court lacks personal jurisdiction over both Liberty National and W.B. Terry, the court must proceed to the next step of the two-part analysis and determine "whether in equity and good conscience" this action should proceed without these two parties. Coca-Cola has argued that Liberty National is not an indispensable party by virtue of its position as a trustee. This position is based upon the fact that the stock purchase agreement contains a non-recourse provision in favor of the bank, which excludes any personal liability on the part of the trustee and also because it is a mere custodian of the stock and does not, in fact, exercise any of the rights of a shareholder but leaves the running of Mideast to its management. This argument ignores the fact that the stockholder of Mideast is an indispensable party to this action, and at this point in the proceedings, neither the *de jure* owner of the stock (*i.e.,* Liberty National as trustee) or the allegedly *de facto* owner (*i.e.,* W.B. Terry) is a party to this action. In stating the foregoing, this court expresses no opinion whatsoever on the issue of whether the bank is a mere custodian or is full owner of the stock in both law and fact but merely recognizes the arguments put forth by Coca-Cola as to the status of the bank. The status of these persons is a question that must await resolution once they are made parties to this action.

Coca-Cola further asserts that in the January 5, 1983, amendment to the stock purchase agreement, Procter & Gamble and Mideast agreed not to assert the "condition" of the pendency of this lawsuit or the entry of an injunction in this lawsuit as a condition that would allow termination of the stock purchase agreement. Coca-Cola further argues that that amendment allows each party to "walk away" from the anticipated sale, with each party to bear its own expenses, if they are unable to consummate the sale because of court action in this lawsuit. Coca-Cola thus argues that this court should find that neither Procter & Gamble nor W.B. Terry (who guaranteed performance by Liberty National under the purchase agreement) will be harmed by the outcome of this litigation, whatever it might be. This argument is unpersuasive, since a stockholder would suffer "harm" if a court forbids him to sell his stock even if he is insulated from a suit for breach of contract.

Based upon the foregoing, the court concludes that Liberty National Bank is a necessary party to this action and further concludes that because of W.B. Terry's status as a guarantor of the stock purchase agreement and because of Coca-Cola's allegations with regard to his status as the person who exercises actual control over Mideast stock, his presence is also necessary for a full and just adjudication. Applying the factors set out in Rule 19(b), this court finds that a judgment rendered in the absence of these parties would be prejudicial to them, that the prejudice suffered by them could not be lessened by protective provisions in the judgment, and that Coca-Cola will still have an adequate remedy even if the case could not proceed in this forum.

Since this court lacks personal jurisdiction over both Liberty National Bank and W.B. Terry and since the court has determined that they are indispensable parties, this action should be dismissed. However, this court believes that the better action is to transfer this matter to a forum which can exercise personal jurisdiction over the indispensable parties and where the case can proceed to a conclusion on the merits. Liberty National Bank is located and maintains its only offices in Kentucky, and W.B. Terry is a resident and citizen of Kentucky. Consequently, the United States District Courts in Kentucky could exercise personal jurisdiction over these parties. Since Mideast is incorporated in Kentucky with its principal place of business located in Lexington, Kentucky, this action could have originally been brought in the United States District Court for the Eastern District of Kentucky. Consequently, this court hereby TRANSFERS this matter to the United States District Court for the Eastern District of Kentucky.

In sum, this court holds that Liberty National Bank and W.B. Terry are indispensable parties and that this action cannot proceed in this forum, since this court lacks personal jurisdiction over these parties. Consequently, the court transfers this action to the United States District Court for the Eastern District of Kentucky.