Riley T. KELLY and Annette A. Kelly, Plaintiffs-Appellees,

v.

COMMERCIAL UNION INSURANCE COMPANY, Defendant-Appellant.

No. 82–4567

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 18, 1983.

Cook, Yancey, King & Galloway, Steven H. Beadles, John D. Collinsworth, Shreveport, La., for defendant-appellant.

John P. Navarre, Oakdale, La., for plaintiffs-appellees.

Before GEE, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

The defendant, Commercial Union Insurance Company, has appealed from the trial court's judgment in favor of the plaintiffs, Riley and Annette Kelly, which awarded

the plaintiffs fire insurance proceeds. On appeal, the defendant claims: (1) that the trial judge improperly required the defendant to prove its arson defense "beyond a shadow of a doubt;" (2) that the trial judge erred in denying the defendant's motion to dismiss the plaintiffs' suit for failure to join allegedly indispensable parties and in refusing to limit the defendant's liability when the plaintiff had already recovered insurance proceeds from another policy on the property; and (3) that the trial court erred in refusing to reopen the case to permit the introduction of newly discovered evidence. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The plaintiffs own a two-acre parcel of land in Oakdale, Louisiana. There are five structures on this property, including the plaintiffs' home and a two-story apartment building. The apartment building was severely damaged by fire around 10 p.m. on June 21, 1980. Neither the plaintiffs nor their family were home at the time of the fire.

It is undisputed that the Commercial Union policy issued to the plaintiffs provided $25,000 worth of coverage on the apartment building, plus contents coverage, and that any loss on the building was payable first to the Louisiana Savings and Loan Association, which held a mortgage on the property. A second insurance policy issued by Ennia Insurance Company for $20,000 was payable to a second mortgagee, the Bank of the Southwest. After the fire, Commercial Union tendered the $25,000 to Louisiana Savings, but Louisiana Savings declined to accept payment because the insurance company was contesting the owner's right to recovery and the payment would not have been enough to pay off the entire mortgage. After an initial dispute about the coverage on the apartment building, Ennia paid $20,000 to the Bank of the Southwest.

The defendant refused to pay the plaintiffs because it suspected them of arson.

The plaintiffs initially filed this action in state court to collect the insurance proceeds.[1] The defendant obtained removal to federal court on the basis of diversity of citizenship. 28 U.S.C. § 1332 (1976). The defendant denied liability, relying on the affirmative defense of arson. It also moved to dismiss the plaintiffs' claim for failure to join indispensable parties—Louisiana Savings, Ennia and Bank of the Southwest—pursuant to Fed.R.Civ.P. 12(b)(7), (h), 19, and contended that its liability should be limited because the plaintiffs, or their mortgagee, had already been paid $20,000 for a building worth no more than that amount.

The district court denied the defendant's motion to dismiss, but it granted the defendant leave to bring Louisiana Savings into the suit in a "simple pleading." After a bench trial, the court entered judgment in the plaintiffs' favor for $25,000, plus $5233.63 for contents coverage, for a total of $30,233.63. The court refused to limit the defendant's liability, even though the plaintiffs had already recovered from Ennia, because the estimates for the cost of repairing the building were higher than the combined value of the two policies. The defendant timely appealed.

## II. THE ARSON DEFENSE.

Under Louisiana law, arson is an affirmative defense against a claim for fire insurance proceeds. The defendant bears the burden of proving by a preponderance of the evidence (1) that the fire was of an incendiary origin, and (2) that the plaintiff was responsible for setting the fire. *Sumrall v. Providence Washington Insurance Co.*, 221 La. 633, 60 So.2d 68, 69 (1952). Of course, there are rarely eyewitnesses to the crime of arson; accordingly, the defendant may prove its case with circumstantial evidence and "a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hy-

---

1. The plaintiffs also sought attorneys' fees and penalties under La.Rev.Stat.Ann. § 22:658 (West 1978), which were denied by the district court. The plaintiffs have not cross-appealed the district court's denial of the statutory fees and penalties.

pothesis but that the claimant is responsible for the fire." *Id.* Proof of "motive plus the incendiary origin of the fire [is], in the absence of believable rebuttal evidence, . . . sufficient to sustain the affirmative defense . . . ." *Id.* at 70; *accord, Rist v. Commercial Union Insurance Co.,* 376 So.2d 113 (La.1979).

We find no merit in the defendant's contention that the district court applied the wrong standard of proof in evaluating the evidence in this case. The trial judge expressly relied on the standard set forth in *Sumrall, supra,* but he concluded that even if the defendant had established the incendiary origin of the fire,[2] it had not succeeded "in demonstrating that the plaintiff was responsible for the blaze."

■ The defendant attempted to establish at trial that the plaintiffs were in dire financial straits and that a friend of theirs, Eddie Haymon, had set the fire at their request. The trial court was not convinced that the plaintiffs' financial status was such as would motivate a person to burn down his property, *see Wallace v. State Farm Fire & Casualty Insurance Co.,* 345 So.2d 1004, 1008 (La.App.), *writ denied,* 349 So.2d 334 (La.1977), and the court found that the defendant had not proved that Haymon "had anything to do with setting this fire." The record does not indicate that these findings were clearly erroneous. Fed.R. Civ.P. 52(a); *Security Insurance Co. v. Dudds, Inc.,* 648 F.2d 273 (5th Cir.1981).

The district court recognized that there was some evidence that the plaintiffs were in "necessitous financial circumstances." Before October, 1977, Kelly had been earning about $25,000 per year as a union business agent, but an injury suffered in an automobile accident in October, 1977 prevented him from returning to his old job.

At the time of the fire his workmen's and unemployment compensation had run out and he had recently obtained a second mortgage on his property to secure a $30,000 loan. Part of this loan was used to pay off his debts, but much of the remaining $18,000 apparently had been spent to cover the family's living expenses. Kelly was supposed to pay off the loan by August, 1980.

The other side of the plaintiffs' financial balance sheet supports the trial court's finding, however, that the plaintiffs, while undergoing some financial difficulties, were not in dire financial straits. Mrs. Kelly was earning $1540 per month as a social worker and monthly rental income from the various structures on the plaintiffs' property totaled $330. The plaintiffs had a net worth of $171,014; their assets included the buildings, furniture and land in Oakdale, Mrs. Kelly's interest in land in Coushatta, Louisiana, and $6974 in a Louisiana Savings and Loan account. Representatives of both Louisiana Savings and the Bank of the Southwest testified that the Kellys had not been delinquent on their mortgage payments; indeed, Louisiana Savings was secure enough about its ability to collect from Mr. Kelly to forego accepting the defendant's $25,000 offer. Further, Kelly was awaiting the decision of the Louisiana Court of Appeals on a Louisiana district court's judgment awarding him $13,900 in back workmen's compensation payments.[3]

The defendant's suggestion that the building was overinsured because Kelly had recently obtained $45,000 worth of insurance coverage for a building that had a market value of $20,000 is unpersuasive. Kelly obtained the additional $20,000 in coverage from Ennia at the request of the second mortgagee to secure its loan. It was not unreasonable for Kelly to increase the Commercial Union coverage in 1980 from

---

2. The defendant presented five experts who testified that the burn patterns on the floor and ceiling of the building indicated the presence of an accelerant. These experts opined that the fire was of incendiary origin. The plaintiffs suggested that the burn patterns could have resulted from Kelly's use of Varsol in refinishing the floor or from the unique structure of the building itself. Since we perceive no error in

the district court's finding that the defendant had not established the plaintiffs' responsibility for the fire, we need not be concerned with whether the defendant proved incendiary origin.

3. The court of appeals affirmed the award of $13,900 to Kelly in July, 1980.

the $15,000 level set some years before; the insurance agent had specifically approved the increase to $25,000 in light of his own familiarity with the building.

Since the defendant was unable to place the plaintiffs in the vicinity of the building at the time of the fire, it was forced to try to demonstrate that someone else had set the fire at the plaintiffs' request. The defendant presented evidence that Eddie Haymon was a friend of the plaintiffs, that he had been suspected of arson on another occasion, and that he had arrived at a hospital in Alexandria with severe burns at 11:15 p.m. on June 21, 1980. As the trial court pointed out, however, Haymon "had a reasonable alibi supported by the two persons who were with him."

The fire alarm went off at 10:13 p.m. The evidence is uncontradicted that Haymon was engaged in a fight at Don's Lounge as of 9:51, when the bartender called the police. The police arrived at 9:54 and Haymon and one lounge employee recalled Officer Doyle's talking to Haymon, although Doyle had no such recollection. If the fire started a few minutes before the alarm went off, Haymon would have had only about fifteen minutes to drive from the bar to the Kellys', pour an accelerant all over the premises, set the fire and escape without being seen, even though the Kelly property was well lit. Haymon's explanation that he was burned around 10:30 p.m. when he ignited a trash pile was corroborated by the person who drove him to the hospital, Howard Johnson. While the defendant questions whether Haymon could have been burned at 10:30 and driven to a hospital over forty miles away by 11:15, its own scenario of a fifteen minute arson job evokes images of a Charlie Chaplin movie. Certainly, the trial judge's skepticism about the connection between Haymon and the Kelly fire was not in error.

## III. LIMITATIONS ON LIABILITY.

The defendant contends that the trial judge erred in denying its motion to dismiss for failure to join indispensable parties. Fed.R.Civ.P. 12(b)(7), (h), 19. The defendant maintained that Louisiana Savings was a necessary and indispensable party because it was designated as the loss payee under the mortgage clause in the Commercial Union policy. Further, the defendant desired joinder of Ennia because it had also insured the building and of the Bank of the Southwest because it was designated as the loss payee under the Ennia policy. The district court denied the defendant's motion with the caveat that Louisiana Savings could be brought into the suit "in a simple pleading."

Rule 19(a) [4] states that a person shall be joined if

(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

In *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), the Supreme Court explained that "[w]hether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation." *Id.* at 118, 88 S.Ct. at 742. The Court directed trial courts to examine "the situation to determine whether [the lawsuit] can proceed without [the party]," *id.* at 119, 88 S.Ct. at 743, and it expressed a reluctance to have a court dismiss a lawsuit when other alternatives were available. *Id.* at 112, 88 S.Ct. at 739. *See also* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1609

---

4. Fed.R.Civ.P. 19 governs whether a party is indispensable in a diversity case. *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 125 n. 22, 88 S.Ct. 733, 746 n. 22, 19 L.Ed.2d 936 (1968); *Harrell & Sumner Contracting Co. v. Peabody Peterson Co.,* 546 F.2d 1227, 1228 (5th Cir.1977).

(1972). We have noted that "[p]ragmatic concerns rather than conclusory labels now control" whether a suit should be dismissed for failure to join an indispensable party, *Moreau v. Oppenheim,* 663 F.2d 1300, 1309 (5th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 3486, 73 L.Ed.2d 1368 (1982) (quoting 7 C. Wright & A. Miller, *Federal Practice & Procedure* § 1612 at 122 (1972)), and that decision is within the trial court's discretion. *Haas v. Jefferson National Bank,* 442 F.2d 394, 400 (5th Cir.1971); *Morrison v. New Orleans Public Service, Inc.,* 415 F.2d 419 (5th Cir.1969).

In *Provident Tradesmens,* the Supreme Court identified four interests that should be examined in·determining whether "in equity and good conscience," the court should proceed in the absence of an allegedly indispensable party: (1) the plaintiff's interest in securing a forum for his lawsuit; (2) the defendant's interest in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another;" (3) the interest of the "outsider whom it would have been desirable to join;" and (4) the interest of the courts and the public in "complete, consistent, and efficient settlement of controversies." 390 U.S. at 109–11, 88 S.Ct. at 737–38. Only the second and third interests are of particular relevance in this case, and we hold that neither interest was unduly infringed upon by the district court's action. Indeed, if any interests have been impaired, it is the parties' own actions that have caused the impairment, not the court's or the plaintiffs'.

*Smith v. State Farm Fire & Casualty Co.,* 633 F.2d 401 (5th Cir.1980), presents a joinder request analogous to the defendant's. In *Smith,* one of the plaintiffs, the owner of a life estate in the property that had been destroyed by fire, was involved in voluntary bankruptcy proceedings. Although the trustee in bankruptcy had notified the other plaintiff that he claimed an interest in the

insurance proceeds, and although the insurance company claimed that the property interest in the destroyed premises was held by the trustee, neither party took any steps to add the trustee as a party to the action.[5] On appeal, the insurance company argued that if the two plaintiffs were joint obligees, then the trustee was necessarily an indispensable party. We disagreed and noted that the absent trustee could protect his interests regardless of the outcome of the litigation by proceeding against the plaintiffs and that

> [t]he fact that the trustee was willing to rely on the efforts of Gladys, together with the fact that State Farm's obligation is limited to that specified under the contract of insurance, strongly suggest that State Farm is not subject to a "substantial risk" of incurring double liability for the value of the life estate.

633 F.2d at 405.

As in *Smith,* the circumstances of this case "strongly suggest that [the defendant] is not subject to a 'substantial risk' of incurring double liability." Louisiana Savings declined to accept the defendant's offer of the $25,000, and stated that it was content to protect its interest as mortgagee with the remaining security on the plaintiffs' property. Should Louisiana Savings change its mind and decide to sue, the defendant could presumably defend on the ground that it had already paid out the limits of the policy to the plaintiffs only after having tendered to Louisiana Savings. While Commercial Union did raise the joinder issue before trial, it did not bother to avail itself of its opportunities to protect its interests. If the defendant's fears of exposure to double liability were justified, it could, as the district court suggested, have filed a counterclaim under Fed.R.Civ.P. 22 interpleading Louisiana Savings, *see Eikel v. States Marine Lines, Inc.,* 473 F.2d 959, 966 (5th Cir.1973), but it chose not to do so.[6]

---

**5.** The pretrial order stated that there were no questions concerning nonjoinder.

**6.** We note that in a number of cases where the court required dismissal, the indispensable party could not have been joined without destroy-

ing the court's diversity jurisdiction. Since the court could not proceed without the indispensable party but could not retain jurisdiction if the party were joined, dismissal was the only viable option. *See, e.g., Haas v. Jefferson Nat'l*

Under these circumstances, we hold that the district court's refusal to dismiss the plaintiffs' suit was not an abuse of discretion.

The defendant also contends that it was entitled to a credit for the fire insurance proceeds already paid by Ennia to the second mortgagee, or at least that it should not have been held liable for any loss in a greater proportion than the amount insured by it bore to the total insurance on the property. The district court held Commercial Union liable for the full amount of the policy because two of the estimates for the cost of repairing the building were higher than the total amount of insurance. While we affirm the district court's decision, we do so for reasons other than those set forth in the court's opinion. *See United States ex rel. Barbour v. District Director, Immigration & Naturalization Service,* 491 F.2d 573, 577 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974) (in reviewing district court's decision, court of appeals not restricted to grounds relied on by lower court).

■ The Louisiana Valued Policy Law provides that an insurer must pay an insured the full face value of the policy where the destruction of the building constitutes a total loss. La.Rev.Stat.Ann. § 22:695(A) (West 1978).[7] In *Harvey v. General Guaranty Insurance Co.,* 201 So.2d 689 (La.App. 1967), the Louisiana Court of Appeals held that a pro-rata clause in a fire insurance policy does not limit an insurer's liability for a total loss of the insured premises as

long as the "policyholder had a net insurable interest in the property destroyed beyond the value for which other fire insurance policies provide coverage." *Id.* at 693. *Accord, Republic Insurance Co. v. American Public Life Insurance Co.,* 246 So.2d 410 (La.App.1967). The question in this case is whether the fire totally destroyed the plaintiffs' apartment building and whether they retained an insurable interest beyond Ennia's payment to the Bank of the Southwest.

■ Under Louisiana law, damaged property is considered to be a total loss where the cost of repairs exceeds the value of the property. *Dumond v. Mobile Insurance Co.,* 309 So.2d 776, 778 (La.App.1975). The plaintiffs' apartment building would have to be considered a total loss under this test even if the court were to accept the lowest estimate of the cost of repairing the building. A year before the fire, an appraiser valued the building at $20,000, and contractor Piper estimated that he could repair the building for $32,734.92. The other two contractors, Wright and Winn, did not think that they could repair the building for less than $56,984.00 and $47,970.00, respectively.[8]

■ The Louisiana Insurance Code defines an "insurable interest" as "any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage." La.Rev.Stat.Ann.

---

*Bank,* 442 F.2d 394 (5th Cir.1971). Since the possible absence of diversity of citizenship between Louisiana Savings and the Kellys would not have affected the availability of rule 22 interpleader in the form of a counterclaim, this would not have been a problem here. *Eikel v. States Marine Lines, Inc.,* 473 F.2d 959, 964–66 (5th Cir.1973).

7. La.Rev.Stat.Ann. § 22:695(A) (West 1978) provides:

Under any fire insurance policy, which may be written hereafter, and which is intended to take effect, at or after 12 o'clock noon, Central Standard time, on the first day of August, 1952, on any inanimate property, immovable by nature or destination, situated within the state of Louisiana, the insurer

shall pay to the insured, in case of total destruction, without criminal fault on the part of the insured or the insured's assigns the total amount for which the property is insured, at the time of such total destruction, in the policy of such insurer.

8. The defendant insists that the district court should have accepted the lowest bid in calculating the cost of repairs. The court rejected Piper's estimate because he had never repaired the same type of structure before and had not computed his costs on a square footage basis. Because the building would have to be considered a total loss even on the basis of Piper's estimate, we need not determine whether the trial court erred in rejecting his testimony.

§ 22:614(B) (West 1978). Under this test, there were at least three parties who had an insurable interest in the apartment building: both Louisiana Savings and the Bank of the Southwest had an interest as mortgagees, and the Kellys had an interest as the owners of the property. *See Republic Insurance, supra,* 246 So.2d at 412. While the Ennia policy covered and paid for the interest of the second mortgagee, there remained the interests of Louisiana Savings and the plaintiffs. Since the property was totally destroyed and the plaintiffs retained an insurable interest in the property after Ennia's payment to the second mortgagee, the district court was correct in requiring Commercial Union to pay the full value of the policy.[9]

## IV. MOTION TO REOPEN THE EVIDENCE.

█ Two months after the trial had been completed but before the trial court had rendered judgment, the defendant filed a motion to reopen the case for the taking of additional evidence. At the court's request, the defendant submitted affidavits from Officers Hall and Doyle, in which the officers stated that they had not seen Haymon in Don's Lounge on the night of the fire. The defendant also filed a report by Deputy Fire Marshal George, in which he stated that he recommended that the parish district attorney accept charges of arson against Haymon and Kelly. The court denied the defendant's motion because it found that the statements in the affidavits did not present any substantial conflict with the testimony given by the affiants at trial. The court noted further that there was no indication that the district attorney actually intended to accept the deputy's recommendation and that George's report basically reiterated the defendant's and George's positions at trial.

The decision whether to reopen a case for additional evidence is "normally a discretionary matter for the trial court to decide," *Lirette v. Popich Bros. Water Transport, Inc.,* 660 F.2d 142, 145 (5th Cir.1981) (quoting *Morales v. Turman,* 562 F.2d 993, 996 (5th Cir.1977)), and it is "within the trial court's discretion to exclude cumulative evidence." *Id.* Since we agree with the trial court that the defendant's proffered evidence was merely cumulative, and that the evidence would not have affected the result in this case, we conclude that the court's denial of the defendant's motion was not an abuse of discretion.

The district court's decision is AFFIRMED.

---

**9.** Since the existence of the second insurance policy did not limit Commercial Union's liability, the defendant was not prejudiced by the district court's refusal to require joinder of Ennia and the Bank of the Southwest.