# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60774
Cons w/ No. 15-60876

United States Court of Appeals
Fifth Circuit

**FILED**

March 1, 2017

Lyle W. Cayce
Clerk

FEDERAL INSURANCE COMPANY,

> Plaintiff - Appellant

v.

SINGING RIVER HEALTH SYSTEM,

> Defendant – Appellee

Consolidated with 15-60876

FEDERAL INSURANCE COMPANY,

> Plaintiff-Counter Defendant - Appellee

v.

SINGING RIVER HEALTH SYSTEM,

> Defendant – Appellant

&

SINGING RIVER HEALTH SYSTEM FOUNDATION,

> Counter Claimant – Appellant

Appeals from the United States District Court
for the Southern District of Mississippi

No. 15-60774
Cons w/ No. 15-60876

Before HIGGINBOTHAM, JONES, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

In this insurance coverage dispute, the district court granted partial summary judgment in favor of Singing River Health System and Singing River Health System Foundation and partial summary judgment in favor of Federal Insurance Company. The parties appeal, and we affirm in part, and reverse and render in part.

I.

Federal Insurance Company ("Federal") provided insurance to Singing River Heath System ("SRHS") (collectively with Singing River Health System Foundation, "Medical Insureds"). This coverage dispute between Federal and Medical Insureds relates to various underlying lawsuits arising from SRHS's alleged underfunding of its Retirement Plan and Trust ("SRHS Lawsuits"). The SRHS Lawsuits involve various claims, such as breach of fiduciary duty, breach of contract, violations of the United States Constitution and the Mississippi constitution, and violations of 42 U.S.C. § 1983.

As relevant to this appeal, Federal issued to SRHS a Health Care Portfolio, Policy No. 8211-9592, which had a policy period of March 1, 2014 to March 1, 2015 (the "2014-2015 Policy"). The 2014-2015 Policy contains two parts, both of which are written on a claims-made basis[1]: (1) a Fiduciary Coverage Section ("Fiduciary Coverage"), and (2) an Executive Liability, Entity Liability, and Employment Practices Liability Section ("ELI/EPL Coverage"). The policy limit for Fiduciary Coverage is $1 million for each claim, and the

---

[1] "A 'claims made' policy protects the holder only against claims made during the life of the policy, while an 'occurrence' policy protects the policyholder from liability for any act done while the policy is in effect." *Jones v. Baptist Mem'l Hosp.-Golden Triangle, Inc.*, 735 So. 2d 993, 999–1000 (Miss. 1999) (citation omitted).

No. 15-60774
Cons w/ No. 15-60876

policy limit for ELI/EPL Coverage is $5 million for each claim.  Under the Fiduciary Coverage, "[Federal] shall pay, on behalf of the Insureds, Loss for which the Insureds become legally obligated to pay on account of any Fiduciary Claim [under certain conditions]."  The ELI/EPL Coverage contains a similar obligation to pay for loss.

The 2014-2015 Policy contains the following language relevant to this appeal:

> The applicable limit(s) of liability to pay "loss" will be reduced, and may be exhausted, by "defense costs" unless otherwise specified herein.
>
> . . . .
>
> The limit of liability to pay "loss" will be reduced and may be exhausted by "defense costs", unless otherwise specified herein, and "defense costs" will be applied against the retention.  In no event will the company be liable for "defense costs" or other "loss" in excess of the applicable limit(s) of liability.
>
> . . . .
>
> If the Optional Separate Defense Costs Coverage is not purchased, Defense Costs shall be part of, and not in addition to, the Limits of Liability set forth . . . for this coverage section, and the payment by the Company of Defense Costs shall reduce and may exhaust such applicable Limits of Liability.

(emphasis omitted).  SRHS did not purchase the Optional Separate Defense Costs Coverage.  The application for the 2014-2015 Policy states:

> The limit of liability to pay damages or settlements will be reduced and may be exhausted by "defense costs," and "defense costs" will be applied against the retention amount.  In no event will the company be liable for "defense costs" or other "loss" in excess of the applicable limit of liability.

(emphasis omitted).  In this application, SRHS did not check the box for Optional Separate Defense Costs Coverage.

3

No. 15-60774
Cons w/ No. 15-60876

The 2014-2015 Policy defines Defense Costs as "that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses . . . incurred in defending any Claim." "Loss," in turn, is defined as "the amount that any Insured . . . becomes legally obligated to pay on account of any covered [Claim], including but not limited to . . . Defense Costs." Finally, the ELI/EPL Coverage contains Exclusion 7(e), which provides that:

> The Company shall not be liable for Loss on account of any Claim . . . for any actual or alleged violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world (including but not limited to the Employee Retirement Income Security Act of 1974 (except section 510 thereof) and the Consolidated Omnibus Budget Reconciliation Act of 1985), . . . that governs any employee benefit arrangement program, policy, plan or scheme of any type . . . ("Employee Benefits Program Laws"), including but not limited to any . . . retirement income or pension benefit program . . . [or] similar arrangement, program, plan or scheme.

SRHS and various individual insureds tendered defense of the SRHS Lawsuits to Federal, and Federal defended SRHS and the individual insureds under a reservation of rights.[2] In its reservation of rights letter, Federal stated that, pursuant to the policy, Defense Costs deplete the policy limits. Federal also denied ELI/EPL Coverage on the grounds that Exclusion 7(e) covered the subject matter of the SRHS Lawsuits.

---

[2] "When an insurer provides a defense for an insured under a reservation of rights, the insurer defends the insured 'while at the same time reserving the right to deny coverage in [the] event a judgment is rendered against the insured.'" *Hartford Underwriters Ins. Co. v. Found. Health Servs. Inc.*, 524 F.3d 588, 592 n.2 (5th Cir. 2008) (alteration in original) (quoting *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996)).

4

No. 15-60774
Cons w/ No. 15-60876

In its subsequent declaratory action, Federal sought a declaration that, inter alia, "the Limit of Liability under the Fiduciary Coverage Section is $1 million, subject to a $1 million aggregate limit, and a $10,000.00 Retention, with Defense Costs eroding or depleting those limits." It also sought a declaration that no coverage exists under the ELI/EPL Coverage section. SRHS filed a counterclaim, which named as a party Singing River Health System Foundation, formerly known as Coastal Medical Healthcare Foundation Inc. (the "Foundation"). The counterclaim alleged "causes of action" for waiver, estoppel, civil conspiracy, breach of contract, tortious breach of contract, breach of fiduciary duty, breach of the duty of good faith and fair dealing, bad faith, interference with contract and business relations, and conversion, and sought declaratory relief.

Medical Insureds moved for partial summary judgment and injunctive relief, or in the alternative for a preliminary injunction. By this motion, Medical Insureds requested the court order Federal to continue to pay all Defense Costs in the SRHS Lawsuits without regard to the policy limits. The district court granted the motion, entering judgment that "defense costs paid in the underlying pension plan litigation . . . should not be deducted from the policy limits."

While Medical Insureds' motion was pending, Federal moved for summary judgment, requesting the district court issue a declaratory judgment that Federal's defense and indemnity obligations for the SRHS Lawsuits are limited to the policy's $1 million Limits of Liability for Fiduciary Liability Coverage and that Defense Costs erode this limit. Medical Insureds then moved to join necessary parties and for the court to continue its ruling on Federal's motion so Medical Insureds could conduct discovery pursuant to Federal Rules of Civil Procedure 56(d). The district court denied Medical

No. 15-60774
Cons w/ No. 15-60876

Insureds' motion and granted Federal's motion in part. After determining that there was no just reason for delay, the court entered a partial final judgment.

## II.

The district court exercised diversity jurisdiction under 28 U.S.C. § 1332. Both parties appealed from the district court's Rule 54(b) partial final judgment. Because the district court properly entered a partial final judgment under Rule 54(b), *see Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 740 (5th Cir. 2000), we have jurisdiction.[3]

We review a grant of summary judgment de novo, applying the same standard as the district court. *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001). Summary judgment is proper where there is no genuine dispute of material fact, and a party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

We review a district court's interpretation of a contract de novo, *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004), and a denial of a Federal Rule of Civil Procedure 56(d) motion for discovery for an abuse of discretion, *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534 (5th Cir. 1999). Finally, we review the denial of a motion to join under Federal Rules of Procedure 19(a) and 20 for an abuse of discretion. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 520 (5th Cir. 2010); *Bank One Tex. N.A. v. Arcadia Fin. Ltd.*, 219 F.3d 494, 497 (5th Cir. 2000).

---

[3] Having determined the district court correctly entered its Rule 54(b) partial final judgment, we deny Medical Insureds' motion to dismiss filed on February 12, 2016. It is therefore administratively unnecessary to consider Federal's first notice of appeal, as it is duplicative of its second notice of appeal. The Clerk of Court is directed to administratively close No. 15-60774, deny Medical Insureds' motion to dismiss filed November 13, 2015, as moot, and ensure that all documents related to Federal's second notice of appeal are docketed in No. 15-60876. Federal's appeal and Medical Insureds' cross-appeal are considered jointly under No. 15-60876.

No. 15-60774
Cons w/ No. 15-60876

III.

A.

We first address the issue raised in Federal's appeal: whether the district court erred in determining that "Defense costs paid in the underlying pension plan litigation pursuant to *Moeller v. American Guarantee & Liability Insurance Co.*, 707 So. 2d 1062 (Miss. 1996), should not be deducted from the limits applicable to the March 1, 2014 through March 1, 2015 policy." The 2014-2015 Policy states in multiple places that Defense Costs erode policy limits and that Federal will not pay Defense Costs over and above policy limits. On appeal, Medical Insureds argue that (1) the policy terms and *Moeller* mandate the payment of Defense Costs separate and apart from the policy limit and (2) alternatively, public policy prevents Defense Costs from eroding policy limits.

Under Mississippi law, insurance policies are to be enforced according to their provisions. *Noxubee Cty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1166 (Miss. 2004). The Mississippi Supreme Court has noted that

> [w]hen parties to a contract make mutual promises (barring some defense or condition which excuses performance), they are entitled to the benefit of their bargain. Thus, insurance companies must be able to rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions, in order to receive the benefit of their bargain and to ensure that rates have been properly calculated.

*Id.* "[I]n interpreting an insurance policy, this Court should look at the policy as a whole, consider all relevant portions together and, whenever possible, give operative effect to every provision in order to reach a reasonable overall result." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) (alteration in original) (quoting *J & W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723

7

No. 15-60774
Cons w/ No. 15-60876

So. 2d 550, 552 (Miss. 1998)).  Furthermore, where a contract is clear and unambiguous, it must be interpreted as written.  *Id.* (citation omitted).

1.

With this framework in mind, we begin with *Moeller*, which, Medical Insureds maintain, requires Federal to pay their Defense Costs without regard to policy limits.  In *Moeller*, the insurer defended the insureds, a law firm, in a business dispute under a reservation of rights.  707 So. 2d at 1064, 1066.  In addition to being represented by the insurer's choice of counsel, the law firm retained separate counsel in the business dispute.  *Id.*  The law firm later sought to be reimbursed by the insurer for the cost of its separate counsel.  *Id.* at 1067.  In holding that the insurer was responsible for this cost, the Mississippi Supreme Court discussed the ethical obligations of counsel and noted that "other jurisdictions have generally held that in such a situation, not only must the insured be given the opportunity to select his own counsel to defend the claim, the carrier must also pay the legal fees reasonably incurred in the defense."  *Id.* at 1069–71 (citing cases).

*Moeller* does not stand alone, but rather reflects the commonly accepted rule that where a conflict of interest exists, the insurer must pay for the insured's separate counsel.  *See* 12 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 148.04 (2016).  *Moeller* did not speak to the ability of an insured to include Defense Costs as eroding the policy limit.

Indeed, *Southern Healthcare Services, Inc. v. Lloyd's of London*, 110 So. 3d 735 (Miss. 2013), establishes that *Moeller* does not create an absolute right to reimbursement of all defense costs.  There, the Mississippi Supreme Court enforced a provision in an insurance contract that required the insureds to pay a deductible of $250,000 towards any liability, which included defense costs. *S. Healthcare Servs.*, 110 So. 3d at 747.  In so determining, the court noted that

No. 15-60774
Cons w/ No. 15-60876

*Moeller* "cannot be read in a vacuum." *Id.* at 748. Rather, there was no indication that the policy in *Moeller* included a deductible, and "the principles therein cannot be strictly applied without taking into account the terms of the specific policies at issue." *Id.* Accordingly, "where the policy specifies that defense costs are included in the deductible, the insurer is not responsible for defense costs until the deductible has been paid." *Id.* At bottom, the Mississippi Supreme Court in *Southern Healthcare* determined that the general duty to provide independent counsel set forth in *Moeller* is subject to the terms of the applicable policy. Applying this rationale, Federal's duty to pay Defense Costs is subject to the terms of the 2014-2015 Policy, which states in multiple locations that Defense Costs erode policy limits. Indeed, SRHS specifically declined to purchase separate coverage for Defense Costs.

Medical Insureds' contention that Federal cannot subtract Defense Costs from the policy limits is based on *Moeller* and the language of the policy, specifically the phrase "becomes legally obligated to pay." According to their argument, Defense Costs is defined by reference to Loss, which is "the amount that any Insured . . . becomes legally obligated to pay." Medical Insureds maintain that, because of this language, the only Defense Costs that can be eroded are those that Medical Insureds are legally obligated to pay and, under *Moeller*, they are not "legally obligated to pay" the Defense Costs because those costs are to be borne by the insurer, Federal. This argument rests on a misunderstanding of *Moeller*, which says nothing about an insured's separate obligation to pay for its counsel. In support of their contention that they had no obligation to pay for their counsel, Medical Insureds point to various affidavits that merely restate this same misunderstanding of *Moeller*. These affidavits do not undercut the basic premise that, without the insurance policy, the attorneys' fees incurred in defending a case would be borne by the client

either under contract law, a theory of unjust enrichment, or otherwise. *Cf. Gon v. First State Ins. Co.*, 871 F.2d 863, 868 (9th Cir. 1989) (where the insurer agreed to pay defense costs that the insured is "legally obligated to pay," the insurer "must pay legal expenses as they are incurred, because an insured becomes legally obligated to pay legal expenses as soon as the services are rendered"). The fact that the insurance policy places some burden to pay the fees on the insurance company does not undermine this principle.

Moreover, Medical Insureds' argument reads the several eroding policy provisions out of the policy. They have identified no circumstance under their reasoning where attorney's fees would be both covered by the policy and fees that the insured would be "legally obligated to pay." In other words, Medical Insureds argue that Federal must defend all covered or potentially covered claims and that such sums are ones that they are not "legally obligated to pay." Under this reasoning, there would never be any "Defense Costs" as defined in the policy. Reading several clauses out of the policy, including ones that make clear that a non-eroding policy will cost extra, is inconsistent with the requirement to consider the language of the policy as a whole. *See Corban*, 20 So. 3d at 609. The only reasonable construction of the policy is that the insurance company assumes the burden of fees and losses that, but for the insurance policy, would be the insured's legal obligation. Accordingly, we reject Medical Insureds' argument that *Moeller* and the policy language require Federal to pay Defense Costs without regard to policy limits.

2.

We next turn to Medical Insureds' public policy arguments. "[C]ourts must enforce contracts as they are written, unless such enforcement is contrary to law or public policy." *Allstate Ins. Co. v. Chi. Ins. Co.*, 676 So. 2d 271, 275 (Miss. 1996) (citation omitted). "In determining whether contracts should be

No. 15-60774
Cons w/ No. 15-60876

invalidated on the ground that they violate public policy, [the Mississippi Supreme Court] ha[s] held that this should not be done unless the contract is prohibited by the Constitution, a statute, or condemned by some decision of the courts construing the subject matter." *Cappaert v. Junker*, 413 So. 2d 378, 380 (Miss. 1982).

Medical Insureds' first public policy argument is based on *Moeller*, but, as already explained, *Moeller* does not create an absolute duty to defend. Accordingly, *Moeller* does not create a prohibition on a defense-within-limits policy as a matter of public policy.

We also reject Medical Insureds' public policy arguments based on Mississippi statutory law,[4] specifically Mississippi Code sections 41-13-11 and 11-46-17(3). Mississippi Code section 41-13-11 authorizes the board of trustees of any community hospital to purchase liability insurance. Under the statute, "[s]uch insurance shall be for such amounts of coverage . . . as the board of trustees, in its discretion, shall determine." MISS. CODE ANN. § 41-13-11(4). According to Medical Insureds, section 41-13-11 prohibits an eroding policy because the insurance "shall" be for the amount of coverage specified. This is an improper interpretation of section 41-13-11. This section simply provides that the board of trustees determines the amount of coverage. *See Sw. Miss. Reg'l Med. Ctr. v. Lawrence*, 684 So. 2d 1257, 1265 (Miss. 1996) (noting that, under Section 41-13-11, "[a] community hospital, in its discretion, may obtain

---

[4] Medical Insureds also make public policy arguments that are not based on statutes or cases. For example, although discussing the Mississippi Insurance Department's "official position" on defense-within-limits policies, Medical Insureds provide no authority that a violation of this position is a violation of public policy. Rather, "contracts are not in violation of the public policy of the government unless either prohibited by express terms or the fair implication of a *statute*, or condemned by some *decision of the courts* construing the subject-matter." *Cappaert*, 413 So. 2d at 380 (emphasis added) (quoting *State ex rel. Knox v. Hines Lumber Co.*, 115 So. 598, 605 (Miss. 1928)).

11

No. 15-60774
Cons w/ No. 15-60876

liability insurance coverage out of its operating funds"). Section 41-13-11 does not require that Defense Costs be excluded from calculation of the amount of coverage.

Medical Insureds' interpretation of section 11-46-17 is similarly misplaced. In its relevant part, this section provides:

> The policy or policies of insurance or self-insurance may contain any reasonable limitations or exclusions not contrary to Mississippi state statutes or case law as are normally included in commercial liability insurance policies generally available to political subdivisions. All the plans of insurance or reserves or combination of insurance and reserves shall be submitted for approval to the board. . . . Whenever any political subdivision fails to obtain the board's approval of its plan, the political subdivision shall act in accordance with the rules and regulations of the board and obtain a satisfactory plan of insurance or reserves or combination of insurance and reserves to be approved by the board.

MISS. CODE ANN. § 11-46-17(3). By its clear terms, section 11-46-17(3) places any obligation to obtain board approval on SRHS, not on Federal. Moreover, the statute does not indicate that any failure to obtain board approval somehow invalidates the policy. *See also Imperial Premium Fin., Inc. v. Khoury*, 129 F.3d 347, 350–51 (5th Cir. 1997) (analyzing a Texas Insurance Code provision). Rather, it states that, in the event of any such failure, the political subdivision "shall act in accordance with the rules and regulations of the board and obtain a satisfactory plan of insurance or reserves or combination of insurance and reserves to be approved by the board." MISS. CODE ANN. § 11-46-17(3). Indeed, if the effect of any such failure were the invalidation of the policy, the *entire* policy would have to be invalidated, not just the defense-within-limits policy. Moreover, there is proof that the policy

12

No. 15-60774
Cons w/ No. 15-60876

was agreed to after a full and fair negotiation of all limitations and exclusions. As the district court noted, the application for the policy was signed by the CEO and CFO of SRHS.

In their final public policy argument, Medical Insureds maintain the defense-within-limits clause is unenforceable because it was not placed on the board's minutes. Mississippi law requires that contracts between a public board and a contracting entity be "spread upon the minutes" of the board and places the responsibility of complying with the "minutes rule" on the contracting entity. *Wellness, Inc. v. Pearl River Cty. Hosp.*, 178 So. 3d 1287, 1291 (Miss. 2015). "[B]y enforcing the minutes rule, the [Mississippi Supreme] Court has recognized the importance of recorded, express consent by all board members to board actions, as board members are elected officials charged with the protection of the public's funds." *Id.* at 1292 (citation omitted). Despite the existence of this general legal proposition, however, Mississippi law specifically authorizes the board of trustees of a community hospital to obtain insurance in a statute that does not incorporate the "minutes rule." *See* MISS. CODE ANN. § 41-13-11(4). In light of this clear statutory dictate, we cannot say that the defense-within-limits provision is unenforceable for failure to place it on the minutes.[5]

---

[5] We therefore do not address the potentially troubling premise of Medical Insureds' argument—that, where a private party to a contract fails to spread a contract on the public entity's board's minutes, the public entity can pick and choose which provisions of a contract it would like to enforce against the private party as opposed to invalidating the entire contract. *See Wellness*, 178 So. 3d at 1291 ("[T]he minutes from the Board of Trustees' meetings do not set forth sufficient terms to establish the liabilities and obligations of the parties, and thus *the court cannot enforce the contract*, much less the mediation or arbitration clauses therein." (emphasis added)). Taken to its logical extreme, this would allow SHRS to enforce the requirement to pay the loss while disavowing the policy limits, an absurd result.

No. 15-60774
Cons w/ No. 15-60876

Ultimately, "insurance companies must be able to rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions, in order to receive the benefit of their bargain, and to ensure that rates have been properly calculated." *United States Fid. & Guar. Co. v. Knight*, 882 So. 2d 85, 92 (Miss. 2004). Mississippi law does not allow the courts to use rules of construction to defeat the parties' own agreement as expressed in the policy. *See State Auto. Mut. Ins. Co. of Columbus v. Glover*, 176 So. 2d 256, 258 (Miss. 1965)). Furthermore, "if the insured wanted a policy that had an unlimited defense obligation, rather than an eroding one, it should have contracted for such a policy." *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 559 (5th Cir. 2008). Here, the policy states that Defense Costs erode policy limits, and public policy does not bar such a provision. Accordingly, the district court erred in determining that Defense Costs did not erode the policy limit, and Federal is entitled to judgment on this issue.

B.

1.

We now turn to Medical Insureds' cross-appeal. The district court granted partial summary judgment in favor of Federal, determining that,

> [a]ll of the claims asserted in *Almond*, *Jones, et al.*, *Thompson*, *Aguilar*, *Drury*, *Bosarge*, *Cobb, et al.*, *Broun, et al.*, *Eiland*, *Lay*, and *Lowe, et al.*, and Counts 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, and 22 of the *Beasley* Complaint are excluded by the plain language of the Employee Benefits Program Laws exclusion [Exclusion 7(e)] in the ELI/EPL section of the policy.

We have previously explained that, under Mississippi law, exclusionary provisions are construed against the insurance company such that if there are two reasonable constructions of such a clause, the one favoring the insured

14

No. 15-60774
Cons w/ No. 15-60876

must be applied. *Liberty Mut. Fire Ins. Co. v. Canal Ins. Co.*, 177 F.3d 326, 331 (5th Cir. 1999). To determine whether Federal has a duty to defend, this court looks to the allegations in the underlying complaints. *Am. Guarantee & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 610 (5th Cir. 2001).[6]

We start by noting that the language in the exclusion is broad, encompassing "any Claim . . . for any actual or alleged violation of the responsibilities, obligations or duties imposed by any federal, state, or local statutory law or common law anywhere in the world . . . that governs any

---

[6] As an initial matter, we must consider whether it was proper for the district court to consider coverage before the SRHS Lawsuits are resolved. We have previously noted that, "[u]nlike the duty to defend, which can be determined at the beginning of a lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co., Inc.*, 647 F.3d 524, 531 (5th Cir. 2011) (citation omitted) (applying Mississippi law). "[U]nlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." *Id.*; *see also D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743–45 (Tex. 2009) (applying Texas law); *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) (applying Louisiana law).

While the duty to indemnify generally cannot be resolved solely on the pleadings, there is an exception to this rule. In *Farmers Texas County Mutual Insurance Co. v. Griffin,* 955 S.W.2d 81, 82, 84 (Tex. 1997), the Supreme Court of Texas announced that the duty to indemnify could be resolved at the summary judgment stage when "the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.*" Thus, the duty to indemnify may be non-justiciable at the summary judgment stage if "facts can be developed in the underlying . . . suit" that negate "any possibility the insurer will ever have a duty to indemnify." *Griffin*, 955 S.W.2d at 84 (emphasis omitted); *see also Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 430 (5th Cir. 2016) (discussing the "no set of facts" exception in *Griffin*); *see also Solstice Oil & Gas I, L.L.C. v. Seneca Ins. Co.*, 655 F. App'x 221, 224–25 (5th Cir. 2016) (similar). We have applied the general rule of non-justiciability in a case governed by Mississippi law, noting that "nothing in our research [] suggests that the Mississippi Supreme Court would deviate from the accepted definition of indemnity if that court were called upon to decide the question before us." *Royal Surplus*, 647 F.3d at 531 n.5. Because we ultimately conclude that all of the district court's identified claims fall within Exclusion 7(e) and there are no set of facts that could be developed in the SRHS Lawsuits that would create a duty to indemnify, judgment as to indemnity is not premature.

15

employee benefit arrangement program, policy, plan or scheme of any type . . . ." We disagree with the Medical Insureds' argument that the district court read "govern" too broadly in determining the identified claims fell under Exclusion 7(e). Laws such as ERISA, the Mississippi Uniform Trust Code, the Civil Rights Act, the United States Constitution, the Mississippi constitution, and general common law create obligations with which employee benefit plans must comply. Accordingly, they "*govern*" employee benefit plans because the obligations they create control the pension plans. Indeed, the plaintiffs in the SRHS Lawsuits only bring claims under the identified common law and statutes because they create obligations with which pension plans must comply. Moreover, the language of the exclusion indicates that the exclusion cannot be limited to laws that "solely governs" employee benefit plans, such as ERISA or COBRA. The exclusion states that the law provided *includes but is not limited to* ERISA and COBRA, meaning the realm of covered law is larger than those two statutes alone.

We also reject Medical Insureds' argument that the constitutional violations alleged in the *Jones*, *Cobb*, and *Beasley* complaints fall outside of the exclusion because, by its terms, Exclusion 7(e) only applies to a "violation of the responsibilities, obligations or duties imposed by any federal, state, or local *statutory law* or *common law*." Put another way, Medical Insureds maintain the exclusion does not encompass constitutional claims. Assuming that "statutory law" and "common law" modify both "federal" and "state," Medical Insureds have not identified a constitutional provision that gives them the right to sue and receive a remedy. Rather, the "constitutional claims" are based on statutory or common law, albeit based on an underlying violation of the constitution. *See, e.g.*, 42 U.S.C. § 1983; *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)). Accordingly, the

No. 15-60774
Cons w/ No. 15-60876

"constitutional claims" fall within Exclusion 7(e) and the district court did not err in determining there was no ELI/EPL Coverage as to the identified claims.

2.

We likewise reject Medical Insureds' remaining arguments on appeal. Medical Insureds maintain that "issues raised in [their] Verified Counterclaim, asserting multiple other bases requiring Federal to defend and indemnify under multiple policies issued from 2009 through 2016, independently preclude any judgment for Federal on direct or cross-appeal."[7] To the extent this argument refers to their waiver and estoppel arguments, the district court explicitly addressed and rejected these claims, and Medical Insureds do not challenge these determinations on appeal.[8] To the extent this argument refers

---

[7] The district court determined that "all claims related to the pension plan are treated pursuant to the plain language of the policy as having been first made during the March 1, 2014, through March 1, 2015 policy issued to Singing River." Medical Insureds do not appeal this determination.

[8] Instead, they maintain that the district court abused its discretion in denying their motion to conduct discovery on these claims prior to ruling on Federal's motion for summary judgment. Rule 56(d) allows the district court to provide additional time for discovery before ruling on a motion if the nonmovant shows an inability to factually support its opposition. FED. R. CIV. P. 56(d). While "Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted," *Am. Family Life Assurance Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)), the party filing the motion must demonstrate "how additional discovery will create a genuine issue of material fact," *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437, 445 (5th Cir. 2001) (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1396 (5th Cir. 1994)). In evaluating a district court's ruling on Rule 56(d) motions, we generally assess whether the evidence presented would affect the outcome of a summary judgment motion. *See Biles*, 714 F.3d at 894.
Medical Insureds have failed to explain how additional discovery would have affected the outcome of the summary judgment motion. *See Prospect Capital Corp. v. Mut. of Omaha Bank*, 819 F.3d 754, 758 (5th Cir. 2016) (affirming the denial of a Rule 56(d) motion where the party failed to "explain how such facts would influence the outcome of the summary judgment motion"); *Biles*, 714 F.3d at 894 (facts must "influence the outcome of the pending summary judgment motion"). The district court specifically addressed the issue of waiver, estoppel, and duty to defend and found the claims failed. Medical Insureds do not explain what other conduct, if proven, would have given rise to a claim for waiver or estoppel that

17

No. 15-60774
Cons w/ No. 15-60876

to additional policies, as the district court noted, the existence of a separate policy between Foundation and Federal was irrelevant because that policy was not at issue in the motion for summary judgment. Indeed, the district court only entered *partial* final judgment.

In its final argument, Medical Insureds maintain that the district court erred in denying their request for joinder of all insureds and plaintiffs in the underlying SRHS Lawsuits under both Federal Rules of Civil Procedure 19(a) and 20. Under Rule 19, a party must be joined if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).

Medical Insureds maintain that all insureds needed to be joined under 19(a)(1)(A) because their presence was necessary to afford complete relief. But the partial final judgment neither mentions any insureds other than SRHS, nor does it make Federal's requested declaration as to the judgment being binding on the other insureds. The district court was therefore able to afford complete relief among the parties without joining the additional insureds, and thus Rule 19(a)(1)(A) did not require their joinder. Medical Insureds also argue the additional insureds needed to be joined under 19(a)(1)(B) because (1) the

---

was not already addressed and rejected by the district court. Accordingly, we reject their argument that the district court abused its discretion in denying their Rule 56(d) motion.

No. 15-60774
Cons w/ No. 15-60876

additional insureds have an interest in establishing the amount of available funds and preserving those funds to cover judgments against them and (2) Federal was exposed to a risk of incurring multiple or inconsistent obligations. But because Medical Insureds and the additional insureds had the same interest—maximizing coverage—their interests were protected. *See Bacardi Int'l Ltd. v. Suarez & Co.*, 719 F.3d 1, 10–12 (1st Cir. 2013). As to the risk of multiple or inconsistent obligations, this risk is borne by Federal, who opposed the motion to join the additional insureds. The district court determined that the likelihood was not substantial as required by the statute, and on appeal, Medical Insureds make no attempt to explain how that determination was in error.

Turning to the joinder of the plaintiffs in the SRHS Lawsuits, Medical Insureds maintain their financial interest in the outcome of coverage dispute makes them required parties under Rule 19(a)(1)(B)(i). Although we have determined that insurance plaintiffs may fall under that subsection, *see Ranger Ins. Co. v. United Hous. of N.M., Inc.*, 488 F.2d 682, 683 & n.3 (5th Cir. 1974), that case is distinguishable. There, the plaintiffs could not intervene in the federal action because their presence would divest the court of diversity jurisdiction. *Id.* at 682–83. By contrast, here, the plaintiffs can intervene because they are diverse. Accordingly, plaintiffs have means to protect their interest. *See Smith v. State Farm Fire & Cas. Co.*, 633 F.2d 401, 405 (5th Cir. 1980) (noting that an absent trustee's ability to protect his interest was not significantly impaired where "[i]t is clear from the record that the trustee was aware of this litigation yet did not attempt to be made a party"); *see also Am. Safety Cas. Ins. Co. v. Condor Assocs., Ltd.*, 129 F. App'x 540, 542 (11th Cir. 2005) (discussing the relationship between required Rule 19(b) and the possibility of intervention). Moreover, as the district court noted, the plaintiffs

19

No. 15-60774
Cons w/ No. 15-60876

have the same interest as Medical Insureds—maximizing coverage—so, like the additional insureds, their interests are protected by Medical Insureds' vigorous litigation in the coverage dispute. *See Bacardi Int'l*, 719 F.3d at 12 ("Where an existing party has 'vigorously addressed' the interests of absent parties, we have no need to protect a possible required party from a threat of serious injury."). Furthermore, as the district court noted, both the additional insureds and plaintiffs in the underlying SRHS Lawsuits had not moved to intervene. *See United States v. San Juan Bay Marina*, 239 F.3d 400, 407 (1st Cir. 2001) (noting that an alleged required party's "decision to forgo intervention indicates that [it] d[id] not deem its own interests substantially threatened by the litigation, [and thus] the court should not second-guess [the district court's determination it was not a required party], at least absent special circumstances").

Under Rule 20, joinder of plaintiffs is permissive "when (1) their claims arise out of the 'same transaction, occurrence, or series of transactions or occurrences' and when (2) there is at least one common question of law or fact linking all claims." *Acevedo*, 600 F.3d at 521. But "even if this test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Id.* (citations omitted). The district court noted that the logistics in joining all of the requested parties would create substantial delay, whereas it was in the best interest of all parties to have coverage determined as soon as possible. We have previously approved of the exercise of discretion to deny a motion under Rule 20 due to concerns of delay and judicial economy, *see Acevedo*, 600 F.3d at 522, and do so here. At bottom, the

No. 15-60774
Cons w/ No. 15-60876

district court did not err in denying Medical Insureds' motion to join additional parties. [9]

## IV.

As to the district court's decision regarding Defense Costs, we REVERSE the grant of summary judgment in favor of Medical Insureds and RENDER judgment in favor of Federal. We AFFIRM the district court's grant of partial summary judgment in favor of Federal regarding ELI/EPL Coverage.

---

[9] We do not address Medical Insureds' argument, made for the first time in their reply, that this court should "revisit" the district court's decisions regarding whether the claims in *Beasley* constitute "related claims."