# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 15, 2025

Lyle W. Cayce
Clerk

No. 24-30588

Virginia M. Adams,

*Plaintiff—Appellant*,

*versus*

Columbia/HCA of New Orleans, Inc. d/b/a Lakeview Regional Medical Center, A Campus of Tulane Medical Center, *incorrectly identified by Plaintiff as* Lakeview Medical Center, LLC.

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-3030

Before Elrod, *Chief Judge*, and King and Graves, *Circuit Judges*.
Per Curiam:[*]

Plaintiff-Appellant Virginia M. Adams appeals the dismissal of her claims against her former employer for interference with her rights under the Family and Medical Leave Act. Finding no reversible error, we AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30588

# I.

## A.

Adams initially worked for Defendant-Appellee Columbia/HCA of New Orleans, Inc., d/b/a Lakeview Regional Medical Center, A Campus of Tulane Medical Center (Lakeview), from 2007 to 2017. In January 2018, Lakeview rehired Adams as a "Laboratory Lead" technician. Adams contends that, during the rehiring process, she informed her supervisor, Janelle Shemroske, that she would need a late start to her workdays because of a chronic illness that is often worse in the mornings. Adams has mast cell disorder, allergies, and asthma. At some point after Adams was rehired, Shemroske and Adams also discussed Adams applying for leave under the Family and Medical Leave Act (FMLA) to cover time missed because of her illness. However, Adams was not immediately eligible for FMLA leave, because she had not worked the requisite 1,250 hours.[1]

By October 9, 2018, Adams had worked 1,250 hours and submitted a request for intermittent FMLA leave beginning October 9. Lakeview uses a third-party administrator, Time Away from Work (TAW), to manage its employees' FMLA leave. After some back and forth, TAW determined Adams was eligible for FMLA. Adams then provided a "Certification of Health Care Provider for Employee's Serious Health Condition" signed and dated October 24, 2018. In a letter dated November 6, 2018, TAW notified Adams that she was approved for FMLA leave "from October 24, 2018, through April 23, 2019."

---

[1] To be eligible for FMLA leave, an employee must have been employed by the employer for at least twelve months and worked 1,250 hours for that employer during the previous 12-month period. 29 U.S.C. § 2611(2)(A)(ii).

2

No. 24-30588

Around this same time, Adams was placed on a "Performance Improvement Plan" (PIP) and disciplined for repeatedly arriving late to work. In accordance with Lakeview's policy, Adams received "attendance points" for each tardy, and based on the accumulated points, received disciplinary action in the form of "verbal" (though documented) warnings on November 2, 2018, and January 11, 2019. The January 11 disciplinary action form reflects that Adams accumulated attendance points on twelve dates between October 12, 2018, and January 9, 2019.

Especially relevant here, forms documenting the PIP included a comment in the goals section that states: "Expedite application to TAW to determine eligibility for use of FMLA for blocks of time missed from work. *FMLA not to be applied to Tardy occur[re]nces.*" (emphasis added). The parties dispute when Adams learned she was placed on a PIP. Lakeview says Shemroske and Adams discussed the PIP on October 9, and the stated goal precipitated Adams's request for FMLA leave that same day. Adams says she did not see the PIP until she first signed it on November 2. Regardless, Adams contends that Shemroske told her on several occasions in October and November, and specifically when discussing the PIP on November 2 and 7, not to use FMLA leave for tardy occurrences. According to Adams, she did not request FMLA leave to cover her late arrivals as a result.

In the contested period between October 9, 2018, and January 9, 2019, Adams reported intermittent FMLA leave on about 20 days. The time requested per day varies from .5 hours to 8 hours. Adams did not request FMLA leave on any of the twelve days she accumulated attendance points for being tardy, with one arguable exception on November 1.[2]

_____

[2] On November 1, Adams requested and received FMLA leave for arriving late to her shift. The PIP dated October 9 appears to note that Adams was tardy on "11-1."

No. 24-30588

In the interim, Adams was also disciplined for conduct unrelated to her attendance. On November 7, 2018, Adams received a final written "conduct/behavior" warning and one-day suspension for offending a coworker when she made "an inappropriate hand gesture." On November 16, 2018, Adams received a final written "performance" and "patient safety" warning for making an error in the Blood Bank department.

On July 25, 2019, Shemroske asked Adams to work in the Blood Bank. Adams replied that she had been taking Benadryl and did not feel comfortable moving to the Blood Bank.[3] Adams was sent home that day. Lakeview later determined that Adams violated its Substance Abuse Policy by failing to notify her supervisor that she was taking a drug that could impair her job performance. On August 9, 2019, Lakeview fired Adams based on the July 25 incident, as well as the November 7 and 16 warnings related to her behavior and performance.

**B.**

Following her termination, Adams brought claims against Lakeview under the Americans with Disabilities Act (ADA) and FMLA. After dismissing some ADA claims for failure to exhaust, the district court granted summary judgment in favor of Lakeview on Adams's remaining claims: discriminatory discharge in violation of the ADA and interference with her rights under the FMLA.

Adams appealed. This court affirmed the district court's dismissal of Adams's ADA claims but reversed on FMLA interference. *Adams v.*

_____

However, November 1 does not appear on the later PIPs, nor on the subsequent disciplinary actions.

[3] Adams explained that she often took Benadryl to combat her symptoms as instructed by her physician.

*Columbia/HCA of New Orleans, Inc.*, No. 22-30389, 2023 WL 2346241, at \*5 (5th Cir. Mar. 3, 2023) (per curiam) (*Adams I*). *Adams I* explained that the district court "did not address the impact of [Adams's] supervisor's comment that she could not use her FMLA leave for her tardy arrivals." *Id.* The court then vacated and remanded the FMLA interference claim for the district court "to consider in the first instance whether Adams's supervisor's comment would have discouraged a reasonable person from taking FMLA leave on the additional days she was marked tardy after her FMLA leave was approved." *Id.*

On remand, the district court denied Adams's request to seek additional discovery, including the deposition of Shemroske. Lakeview then moved for summary judgment. The district court granted Lakeview's motion for summary judgment, reasoning that Adams's FMLA "claim fails on multiple fronts": (1) Adams "cannot point to any evidence that she was actually discouraged from taking FMLA leave by her supervisor's comment" and (2) Adams cannot "prove that any chilling effect of Shemroske's comment caused her actual harm because her termination was for reasons besides her repeated lateness." After the district court denied Adams's motion to alter or amend the judgment, Adams timely appealed.

## II.

On appeal, Adams contends the district court erred in (A) granting summary judgment in favor of Lakeview on her FMLA interference claims, (B) denying her request to seek discovery, and (C) denying her motion to amend the judgment. We address each in turn.

## A.

This court reviews grants of summary judgment de novo. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute as to a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). In reviewing the record, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

"The FMLA generally provides for up to 12 weeks of leave in any 12-month period due to a serious health condition." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021) (citing 29 U.S.C. § 2612(a)(1)(D)). To prove an FMLA interference claim, a plaintiff "must at least show that [the defendant] interfered with, restrained, or denied her exercise or attempt to exercise FMLA rights, and that the violation prejudiced her." *Bryant v. Texas Dep't of Aging and Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015) (quoting *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 347 (5th Cir.2013) (per curiam)); *see also* 29 U.S.C. § 2615(a)(1).

Adams claims that Lakeview interfered with her FMLA rights by discouraging her from using FMLA leave to cover times when she arrived late between October 9, 2018 and January 11, 2019. Specifically, Adams argues that Shemroske discouraged her from using FMLA leave for tardy occurrences by instructing her against it verbally and in writing in a PIP. Interfering with the exercise of an employee's rights under the FMLA includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Cuellar*, 731 F.3d at 346 (citing 29 C.F.R. § 825.220(b)). To determine whether discouragement constitutes interference, this court considers whether the employer's actions would "discourage any reasonable employee from exercising FMLA rights." *Park*

No. 24-30588

*v. Direct Energy GP, L.L.C.*, 832 F. App'x 288, 293–94 (5th Cir. 2020) (per curiam).

We do not address Adams's arguments that the district court erred in determining whether a reasonable person would have been discouraged by Shemroske's comments, because we find the district court correctly determined that Adams cannot show she was prejudiced by any discouragement as required to sustain her claim. The FMLA "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (citing 29 U.S.C. § 2617). "The employer is liable only for compensation and benefits lost 'by reason of the violation,' § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B)." *Id.* In other words, "the cause of action under the FMLA is a restricted one: The damages recoverable are strictly defined and measured by actual monetary losses." *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 739–40 (2003).

Adams does not assert that she incurred any monetary losses as a direct result of being discouraged from taking FMLA leave. Instead, she argues she "was prejudiced by this violation because she was disciplined twice for tardy occurrences," and in both instances, "Shemroske threatened that failure to improve will possibly result in termination of employment." But this theory cannot support recoverable damages because, as the district court found, and this court previously affirmed, Adams was ultimately terminated for reasons unrelated to her attendance. *See Adams I*, 2023 WL 2346241, at *4. Furthermore, Adams conceded at oral argument that no injunctive relief would be appropriate. Oral. Arg. 16:25–31. In the absence of monetary losses or appropriate equitable relief, Adams cannot establish she was prejudiced by any discouragement from taking FMLA leave. Therefore,

we affirm the district court's decision to grant summary judgment in favor of Lakeview on this claim.

Additionally, Adams renews claims that Lakeview interfered with her rights under the FMLA by (1) requiring her to report FMLA leave in thirty-minute increments rather than the shortest increment of leave Lakeview uses elsewhere—fifteen minutes, and (2) failing to provide written notice that FMLA leave would be charged against her paid time off. *See* 29 C.F.R. §§ 825.205(a)(1), 825.300(c). After the district court first dismissed Adams's claims for FMLA interference, Adams appealed and briefed both of these issues in *Adams I*. This court did not address either issue in *Adams I*, instead remanding on the sole issue of the supervisor's comment, suggesting that both arguments were rejected. *See In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001) ("[T]hough not expressly addressed in an initial appeal, those matters that were fully briefed to the appellate court and were necessary predicates to the ability to address the issue or issues specifically discussed are deemed to have been decided tacitly or implicitly, and their disposition is law of the case."); *Northrop Grumman Ship Sys., Inc. v. Ministry of Def. of Republic of Venez.*, 850 F. App'x 218, 226 (5th Cir. 2021) (per curiam) (reasoning that the argument "must have [been] rejected,", in part because it was fully briefed and "the prior panel opinion said nothing about the issue").

Assuming, without deciding, we are free to revisit these claims, we reach the same result. First, Adams falls short of demonstrating a fact dispute as to whether Lakeview prohibited her from reporting leave in fifteen-minute increments. At best, Adams points to evidence suggesting that after she raised her concern to Human Resources, Lakeview *permitted* her to report in fifteen-minute increments, and added a provision to its policy specifying that employees *could* report in fifteen-minute increments. Importantly, Adams does not claim that Lakeview was required to notify her of a right to take leave in fifteen-minute increments. *See* 29 C.F.R. §§ 825.205(a)(1), 825.300(c).

Second, Adams fails to show that she was prejudiced by any failure by Lakeview to provide notice that her FMLA leave would be charged against her paid time off. *See Ragsdale*, 535 U.S. at 90–91 (explaining "the statute's remedial scheme" does not permit an employee to recover for an employer's violation of notice requirements "absent a showing of consequential harm"). Therefore, to the extent these claims survived *Adams I*, we affirm the district court's decision to grant summary judgment in favor of Lakeview.

## B.

Next, Adams contends the district court erred in denying her request to seek additional discovery on remand. "We review a district court's discovery rulings for an abuse of discretion." *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 891 (5th Cir. 2021). When the appellate court remands for the district court to address an issue in the first instance, the district court retains discretion to admit additional evidence, unless bound by specific instructions. *See Franklin v. Regions Bank*, 125 F.4th 613, 630 (5th Cir. 2025). "Whether the law of the case doctrine foreclosed the district court's exercise of discretion on remand and the interpretation of the scope of this court's remand order present questions of law that this court reviews de novo." *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004).

Adams argues the district court "failed to follow both the letter and spirit of the mandate when it denied any discovery after remand," because "the spirit of the mandate require[d] a more fact intensive examination of the circumstances surrounding" her supervisor's comment. But *Adams I* neither limited nor required additional discovery, so the district court retained its discretion. *See Adams I*, 2023 WL 2346241, at *5. And while factual development around Shemroske's comment may have been relevant to the question posed on remand, Adams does not explain what other conduct, if proven, would have given rise to a claim of FMLA interference. *See Fed. Ins.*

No. 24-30588

*Co. v. Singing River Health Sys.*, 850 F.3d 187, 200 n.8 (5th Cir. 2017) (finding no abuse of discretion where party "failed to explain how additional discovery would have affected the outcome of the summary judgment motion"). We decline to find the district court abused its discretion under these circumstances.

## C.

Finally, Adams asserts the district court erred in denying her motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). We review the denial of a Rule 59(e) motion for abuse of discretion. *Jennings v. Towers Watson*, 11 F.4th 335, 345 (5th Cir. 2021). "Granting such a motion is appropriate (1) to correct a manifest error of law or fact, (2) where the movant presents newly discovered evidence that was previously unavailable, or (3) where there has been an intervening change in the controlling law." *Id.* Adams's motion attempted to show manifest errors of law or fact. Because we find the district court correctly granted summary judgment in favor of Lakeview, we find it did not abuse its discretion in denying the motion to alter or amend. *See Bilbe v. Belsom*, 530 F.3d 314, 317–18 (5th Cir. 2008).

\*    \*    \*

Finding no reversible error, the judgment of the district court is AFFIRMED.